**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

IRIS CORPORATION BERHAD,

        Plaintiff,

    v.

THE UNITED STATES,

        Defendant.

No. 15-175C

Judge Eric G. Bruggink

## DEFENDANT'S MOTION TO DISMISS IRIS' FIRST AMENDED COMPLAINT

 

CHAD A. READLER
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

Of Counsel:
CONRAD J. DeWITTE, JR.
Department of Justice

PHILIP CHARLES STERNHELL
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C.  20530
philip.c.sternhell@usdoj.gov
Telephone:   (202) 353-0522
Facsimile:   (202) 307-0345

June 14, 2018

COUNSEL FOR THE UNITED STATES

## Table of Contents

I.  STATEMENT OF THE CASE ........................................................................... 2

    A.  IRIS' First Complaint ............................................................................ 2

    B.  IRIS' Amended Complaint .................................................................... 3

    C.  IRIS' Doctrine of Equivalents Allegations ........................................... 4

II.  ARGUMENT .................................................................................................. 5

    A.  Legal Authority ..................................................................................... 5

    B.  The '506 Patent ..................................................................................... 6

    C.  The Amended Complaint Should Be Dismissed Because The Doctrine Of Equivalents Is Unavailable To IRIS ..................................................... 8

        1.  IRIS relies solely on the doctrine of equivalents for infringement. ............... 9

        2.  IRIS is presumptively barred from relying on the doctrine of equivalents .. 10

        3.  IRIS cannot rebut the presumption of prosecution history estoppel barring it from relying on the doctrine of equivalents. ................................................ 16

III.  CONCLUSION ............................................................................................. 20

## Table of Authorities

**Federal Cases**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) ........................................................................... 5

*Amegen Inc. v. Coherus Biosciences, Inc.*,
No. 17-546, 2018 WL 1517689 (D. Del. Mar. 26, 2018) ................................... 6

*Anchor Sales & Marketing, Inc. v. Richloom Fabrics Grp., Inc.*,
No. 15-4442, 2016 WL 4224069 (S.D.N.Y. Aug. 9, 2016) ................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2006) ............................................................................................. 5

*Deering Precision Instruments, LLC v. Vector Distrib. Sys., Inc.*,
347 F.3d 1314, 1326 (Fed. Cir. 2003) ............................................................... 15

*EMD Millipore Corp. v. AllPure Techs., Inc.*,
768 F.3d 1196 (Fed. Cir. 2014) ........................................................................... 6

*Felix v. Am. Honda Motor Co.*,
562 F.3d 1167, 1184 (Fed. Cir. 2009) ........................................... 15, 16, 17, 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir. 2003) (*en banc*) (*Festo II*) ................................. 16, 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) (*Festo I*) ................................................................... passim

*Funai Elec. Co. v. Daewoo Elec. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010) ......................................................................... 19

*Gharb v. United States*,
112 Fed. Cl. 94 (2013) ......................................................................................... 5

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
370 F.3d 1131 (Fed. Cir. 2004) ................................................................... passim

*I.T.S. Rubber Co. v. Essex Rubber Co.*,
272 U.S. 429 (1926) ........................................................................................... 14

*Indian Harbor Ins. Co. v. United States*,
704 F.3d 949 (Fed. Cir. 2013) ............................................................................. 5

*Intervet Inc. v. Merial Ltd.*,
    617 F.3d 1282 (Fed. Cir. 2010)................................................................. 6, 16

*Int'l Paper Co. v. United States*,
    39 Fed. Cl. 478 (1997) ............................................................................. 10

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991)................................................................. 9

*Lemelson v. United States*,
    752 F.2d 1538 (Fed. Cir. 1985)................................................................. 9

*Lindsay v. United States*,
    295 F.3d 1252 (Fed. Cir. 2002)................................................................. 5

*Litman v. United States*,
    78 Fed. Cl. 90 (2007) ............................................................................... 10

*Masco Corp. v. United States*,
    56 Fed. Cl. 400 (2003) ............................................................................. 11

*Meyer v. Berkshire Life Ins. Co.*,
    372 F.3d 261 (4th Cir. 2004) .................................................................... 10

*NOMOS Corp. v. BrainLAB USA, Inc.*,
    357 F.3d 1364 (Fed. Cir. 2004)................................................................. 9

*Regents of the Univ. of Cal. v. Dakocytomation Cal., Inc.*,
    517 F.3d 1364 (Fed. Cir. 2008)................................................................. 18, 19

*Spectrum Pharm., Inc. v. Sandoz Inc.*,
    802 F.3d 1326 (Fed. Cir. 2015)................................................................. 6

*Stelco Holding Co. v. United States*,
    44 Fed. Cl. 703 (1999) ............................................................................. 10

*Tritek Techs., Inc. v. United States*,
    67 Fed. Cl. 735 (2005) ............................................................................. 6, 11, 16

*Wahpeton Canvas Co. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989)................................................................. 9

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997).................................................................................... 19

**Federal Statutes**

28 U.S.C. § 1498(a) ........................................................................................ 2, 3, 5, 9

35 U.S.C. § 103 .................................................................................................................. 12

35 U.S.C. § 134 .................................................................................................................. 14

35 U.S.C. § 271(a) ........................................................................................................... 3, 4

35 U.S.C. § 271(g) ........................................................................................................ 2, 3, 4

35 U.S.C. § 315(b) ............................................................................................................... 3

35 U.S.C. §§ 311–319 .......................................................................................................... 3

Under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), Defendant, the United States (the Government), moves to dismiss Plaintiff's First Amended Complaint (the Amended Complaint) with prejudice.  In its Amended Complaint, Plaintiff, IRIS Corporation Berhad (IRIS), asserts that the Government infringes U.S. Patent No. 6,111,506 (the '506 patent) through the use of electronic passports allegedly manufactured according to methods claimed in the '506 patent.  The Amended Complaint fails to state a claim on which relief can be granted because it relies upon a doctrine of equivalents infringement theory that is unavailable to IRIS as a matter of law.

Specifically, the Amended Complaint admits that IRIS cannot prove literal infringement for a claim element that is present in all the claims.  Instead, IRIS seeks to prove liability only through application of the doctrine of equivalents for the claim element "disposing a metal ring to surround the integrated circuit."  The Supreme Court has made clear, however, that a patent holder is presumptively prevented from invoking the doctrine of equivalents when he amended the asserted claim to secure the patent and such amendment narrows the patent's scope.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34 (2002) (*Festo I*).  Because IRIS added the "metal ring" element during prosecution for patentability, prosecution history estoppel prevents IRIS' reliance on the doctrine of equivalents.  Any attempt to recapture claim scope surrendered during prosecution is precluded as a matter of law, and IRIS' Amended Complaint therefore fails to allege that any of the accused instrumentalities infringe.

Accordingly, because the Amended Complaint alleges patent infringement only under a doctrine of equivalents theory that IRIS is legally barred from pursuing, the Court should dismiss the Amended Complaint with prejudice for failing to state a claim on which relief can be granted.

## I.      STATEMENT OF THE CASE

### A.      IRIS' First Complaint

On February 24, 2015, IRIS filed a complaint asserting infringement of the '506 patent under Section 1498(a) of Title 28.  Compl. (ECF 1).  The '506 patent is generally directed to a method of manufacturing an identification document (such as a passport) that includes, *inter alia*, a contactless communication insert with a metal ring surrounding an integrated circuit.[1]  *Id.* at Ex. 1.  IRIS alleged that "all electronic passport inlays that have been in use since the issuance of the '506 patent have been manufactured according to the method, or to an equivalent of the method, disclosed and claimed by said '506 patent."  *Id.* at ¶ 10.  IRIS further asserted that "the United States Department of State has been issuing and using U.S. electronic passports that have [been] manufactured outside the United States according to one or more claims of the '506 patent by a company that has not been authorized by IRIS to practice said method."  *Id.* at ¶ 11.  IRIS' first complaint alleged infringement only under 35 U.S.C. § 271(g), and provided no further details as to how any accused electronic passports were manufactured according to IRIS' claimed method.

The Government promptly notified IRIS that the accused U.S. electronic passports are not manufactured, *inter alia,* by "disposing a metal ring to surround the integrated circuit," as required by the '506 patent claims.  *See, e.g.*, J. Prelim. Status Report (ECF 20) at 3.  The Government also notified IRIS that it is precluded from pursuing infringement under the doctrine of equivalents due to claim amendments made during prosecution of the '506 patent.  *Id.* ("[C]onsistent with the analysis in *Honeywell Intern[ational] Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139– 44 (Fed. Cir. 2004), there can be no infringement under the doctrine of equivalents as to this feature.").  IRIS did not dispute the lack of a literal metal ring in the accused products, or that a

---

[1]  The '506 patent is discussed in more detail in Section II.B.

presumptive bar against doctrine of equivalents applied in this case.   *Id.* at 4.   Instead, IRIS responded by citing cases involving **exceptions** to this presumptive bar but provided no basis to support any such exception.   *Id.*

On January 22, 2016, the Department of Justice filed a Petition for *inter partes* review (IPR) of the '506 patent under 35 U.S.C. §§ 311–319.   *See* J. Status Rep. (ECF 27).   On July 25, 2016, the Patent Trial and Appeal Board (PTAB) instituted the IPR[2], which led to a stay of this action pending IPR resolution.   Order (ECF 28).   The IPR was terminated on July 19, 2017 for reasons unrelated to the merits of the Government's invalidity claims.[3]   *See* Corrected J. Status Report (ECF 37).   The stay in the present case was lifted on March 26, 2018.   *Id.*

### B.    IRIS' Amended Complaint

After the stay lifted, on April 13, 2018, the parties filed a Joint Status Report pursuant to this Court's order of April 4, 2018.   Corrected J. Status Report (ECF 37).   In that report, IRIS stated, incorrectly, that it alleged infringement under both 35 U.S.C. § 271(a) and § 271(g):

> [t]he instant litigation alleges two types of infringement under 28 U.S.C. § 1498(a).
> First, plaintiff alleges that at some point within six years before the date this
> complaint was filed and continuing to the date the patent in suit expired, U.S.
> electronic passports were manufactured in the United States by and for the U.S.
> Government according to a method of manufacturing covered by [the '506 patent]
> . . . .  This is a 35 U.S.C. § 271(a) type infringement.  Second, (i) plaintiff alleges
> that when U.S. electronic passports were first introduced, they were manufactured
> outside the United States according to the method covered by the '506 patent."

---

[2]   The proceeding was assigned case No. IPR2016-00497.

[3]   The PTAB terminated the IPR after finding that the Government was statutorily barred by 35 U.S.C. § 315(b).  A motion for rehearing on this issue was denied on January 22, 2018.

*Id.*  The Government noted that "Plaintiff's Complaint alleges only manufacture or use of a claimed invention under § 1498 based on a theory of infringement under 35 U.S.C. § 271(g) . . . .  No allegations under 35 U.S.C. § 271(a) are set forth in the Complaint."  *Id.*

To correct this deficiency, on April 30, 2018, IRIS filed the Amended Complaint alleging infringement under 35 U.S.C. § 271(a) and (g).  Am. Compl. (ECF 39).  This Court granted an extension of time for the Government to respond to the Amended Complaint up to and including June 14, 2018.  Order (ECF 40).

### C.      IRIS' Doctrine of Equivalents Allegations

In addition to amending its complaint to include allegations of infringement under 35 U.S.C. § 271(a), IRIS added allegations "with respect to claim 1 of the '506 patent, upon which claims 2 through and including claim 7 depend, . . . intended to provide notice pursuant to the Rules of the Court of Federal Claims, Rule 8."  Am. Compl. at ¶¶ 14–15.  IRIS' allegations confirm that it relies ***solely*** on the doctrine of equivalents, and not literal infringement, to support its infringement claims for the '506 patent.  *Id.* at ¶ 14 at 5.  Indeed, as stated by IRIS:

> The accused electronic passports . . . have been made by electronically connecting an integrated circuit containing at least a microprocessor, a controller, a memory unity and a radio frequency input/output device to an antenna on a Teslin or other material sheet, and ***disposing an equivalent of a metal ring to surround the integrated circuit***.

*Id.* (emphasis added).[4]

IRIS further alleges that the use of ***foreign*** electronic passports by the United States (through government-required inspections and data verification) constitutes infringement of the

---

[4]  IRIS has also admitted in discovery responses that schematics and samples representing certain accused products do not literally include a metal ring.  Ex. A at 1–7.

'506 patent.[5]  *See, e.g.*, Am. Compl. at ¶ 17.  IRIS, however, has since admitted that it relies solely on the doctrine of equivalents for foreign electronic passports as well.  Ex. B.  Accordingly, the arguments set forth in this motion apply equally to both accused U.S. and foreign electronic passports.

## II.   ARGUMENT

### A.   Legal Authority

"A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy."  *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013) (*citing Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)); *see also Gharb v. United States*, 112 Fed. Cl. 94, 97 (2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006)).

A product literally infringes a patent when it includes each and every element of the patent's claim.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) (internal citations and quotations omitted).  Where no literal infringement is alleged, a patent claim may be found infringed under the doctrine of equivalents only if the differences between the missing claim limitation and the accused product are "insubstantial."  *Festo I*, 535 U.S. at 733. Prosecution history estoppel, however, can bar a patentee from arguing infringement under the doctrine of equivalents.  When an applicant during patent prosecution narrows a claim to avoid

---

[5]  The Government disputes any allegation that it "uses" foreign electronic passports in a manner that would constitute infringement under 28 U.S.C. § 1498(a) as well as that IRIS has adequately identified any foreign passports allegedly manufactured according to the methods claimed in the '506 patent.

prior art, or otherwise address an examiner's concern, estoppel bars the applicant from later invoking the doctrine of equivalents to recapture what it surrendered.  *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) ("[I]t was unnecessary for the district court to perform a doctrine of equivalents analysis because prosecution history estoppel bars [Plaintiff's] arguments.").

"Whether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law."  *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015); *see also Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010).  "This question is decided based on the intrinsic record of the patent, by analyzing the claims, the specification and the prosecution history."  *Tritek Techs., Inc. v. United States*, 67 Fed. Cl. 735, 742 (2005).  Moreover, this issue is appropriate to resolve at the motion to dismiss stage.  *See, e.g., Amegen Inc. v. Coherus Biosciences, Inc.*, No. 17-546, 2018 WL 1517689, at *4 (D. Del. Mar. 26, 2018); *Anchor Sales & Marketing, Inc. v. Richloom Fabrics Group, Inc.*, No. 15-4442, 2016 WL 4224069 (S.D.N.Y. Aug. 9, 2016).

### B.      The '506 Patent

The '506 patent is generally directed to a "method of making an improved security identification document including [a] contactless communication insert unit."  '506 patent at Title. A preferred embodiment of the '506 patent's alleged invention includes a method of making a passport with such a contactless communication unit.  *Id.* at 4:2–4.  The '506 patent claims, however, do not broadly cover all methods of manufacturing any electronic passport.[6]  Rather, the

---

[6]   Notably, and contrary to IRIS' Amended Complaint, the '506 patent does not allege to have disclosed first the concept or manufacture of an electronic passport.  *See, e.g., id.* (listing in References Cited U.S. Pat. No. 5,528,222 and stating in the Abstract thereto that "[a]n object of the invention is a flexible radio frequency tag apparatus that may fit within the thickness limit of

claims are directed to a specific method of manufacture requiring "several layers of a substrate materials such paper or plastic and [having] at least one integrated circuit embedded in the layers forming the document." *Id.* at 6:17–21. Thus, to infringe a claim of the '506 patent, an accused device must be manufactured according to the specific steps articulated in the claimed method, not merely be an electronic passport manufactured by any method.

Claim 1 is the sole independent claim, with claims 2 through 7 adding further limitations on the manufacturing process. For reference, claim 1 is reproduced in its entirety below with notations (a through f) added to identify each limitation:

1.   A method of making an identification document comprising the steps of:

[a]   forming a contactless communication insert unit by electrically connecting an integrated circuit including a microprocessor, a controller, a memory unit, a radio frequency input/output device and an antenna, and disposing a metal ring to surround the integrated circuit;

[b]   disposing the contactless communication insert unit on a substrate and laminating it to form a laminated substrate;

[c]   supplying a first sheet of base material;

[d]   supplying a second sheet of base material;

[e]   disposing the second sheet of base material on top of the first sheet of base material and inserting the laminated substrate including the contactless communication insert unit between the first and second sheets of base material; and

[f]   joining a third sheet of base material to the first and second sheets of base material having the laminated substrate disposed therebetween, the third sheet of base material containing printed text data located so as to be readable by humans.

'506 patent at 20:10–35.

─────────────────────

an ISO standard credit card, a passport cover, a postage stamp, an anti-theft device, or an admission ticket").

Infringement of method claim 1 thus requires the formation, supply, and manipulation of multiple layers: the laminated substrate [b]; the first sheet of base material [c]; the second sheet of base material [d]; and the third sheet of base material [f]. To form the laminated substrate [b], first a contactless communications insert is formed by "electrically connecting an integrated circuit" and then "disposing a metal ring to surround the integrated circuit." *Id.* As shown in Figure 1, "[e]mbedded within the substrate 12 is an integrated circuit IC including a microcontroller 14 such as a known microprocessor, central processing unit or other suitable device disposed thereon." *Id.* at 12:33–42. Figure 1 also shows that a "specially designed metal ring 15, preferably made of SUS 304 stainless steel, is located on the substrate 12 to provide mechanical strength to the document 10 for protecting the integrated circuit." *Id.* at 12:48–51.



As discussed in detail below, the limitation "disposing a metal ring to surround the integrated circuit" was the sole point of novelty found during prosecution, and formed the sole basis for allowance of the '506 patent claims.

### C. The Amended Complaint Should Be Dismissed Because The Doctrine Of Equivalents Is Unavailable To IRIS

IRIS admits that it cannot prove literal infringement for a critical claim element and, instead, relies only on the doctrine of equivalents for the claim element "disposing a metal ring to surround the integrated circuit." But because prosecution history estoppel prevents IRIS' reliance

on the doctrine of equivalents for infringement of that claim element, IRIS' Amended Complaint

fails to allege that any of the accused instrumentalities infringe.

Moreover, because all other claims in the '506 patent depend on independent claim 1, a

finding of non-infringement of claim 1 requires a finding of non-infringement for dependent claims

2 through 7.  To establish infringement of a patent claim, a plaintiff must prove by a preponderance

of the evidence that every limitation set forth in the patent claim is found in the accused product

or process literally or by a substantial equivalent.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533,

1535 (Fed. Cir. 1991) (citations omitted).[7]  Failure to meet a single limitation is sufficient to negate

infringement of the claim.  *Id.*; *NOMOS Corp. v. BrainLAB USA, Inc.*, 357 F.3d 1364, 1367 n.1

(Fed. Cir. 2004) (citation omitted).  A finding of non-infringement of a patent's independent claim

necessitates non-infringement of its dependent claims.  *Wahpeton Canvas Co. v. Frontier, Inc.*,

870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found

infringed unless the claims from which they depend have been found to have been infringed.").

> ### 1.    *IRIS relies solely on the doctrine of equivalents for infringement.*

The Amended Complaint makes clear that IRIS relies ***solely*** on the doctrine of equivalents

in its allegation that the Government infringes claim 1 of the '506 patent.  *See* Am. Compl. at ¶ 14

at 5.  Indeed, IRIS alleges that

> [t]he accused electronic passports . . . have been made by electronically connecting
> an integrated circuit containing at least a microprocessor, a controller, a memory
> unity and a radio frequency input/output device to an antenna on a Teslin or other

---

[7]   The sole waiver of sovereign immunity for unauthorized use or manufacture of an invention disclosed in a patent is in 28 U.S.C. § 1498 but the principles of infringement relevant here are the same as in Title 35.  *See Lemelson v. United States*, 752 F.2d 1538, 1548 (Fed. Cir. 1985) ("Although this court has noted that a section 1498 action and a title 35 action are only parallel and not identical, the principles of claim construction and reading claims on accused devices and methods are the same for either type of action." (citation omitted)).

material sheet, and disposing **an equivalent of a metal ring to surround the integrated circuit**.

*Id.* (emphasis added).

The issue of whether IRIS can rely on the doctrine of equivalents in demonstrating that any accused product is manufactured according to a method that includes the step of "disposing a metal ring to surround the integrated circuit" was raised as early as September 16, 2015. J. Prelim. Status Report (ECF 20) at 5. IRIS has received substantial discovery in the interim and made no allegation of literal infringement with respect to the "metal ring" limitation (and in fact has admitted in discovery responses the lack of a literal metal ring, *see, e.g.,* Ex. A at 1-7). IRIS' April 30, 2018 filing of the Amended Complaint, alleging satisfaction of that limitation **only** by way of equivalence, thus operates as a specific withdrawal of any literal infringement allegation with respect to that limitation. *See, e.g.*, *Stelco Holding Co. v. United States*, 44 Fed. Cl. 703, 710 n.12 (1999) ("A judicial admission is a 'formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for purposes of litigation that the proposition of fact alleged by the opponent is true.'") (quoting *Int'l Paper Co. v. United States*, 39 Fed. Cl. 478, 482 (1997)); *see also Litman v. United States*, 78 Fed. Cl. 90, 135 (2007) (finding language in an amended complaint properly invoked by defendant as a judicial admission); *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004) (judicial admissions include "waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law").

## 2. *IRIS is presumptively barred from relying on the doctrine of equivalents.*

The doctrine of equivalents serves to protect a patent holder against infringement by "insubstantial alterations" not captured in the patent claim that entail only "trivial changes." *Festo I*, 535 U.S. at 733–34. A patent holder, however, is presumed to be estopped from asserting the

doctrine of equivalents when it narrowed the asserted claim by amendment during prosecution in order to secure the patent. *Id*. Specifically,

> [w]hen a claim is rewritten from dependent into independent form and the original independent claim is cancelled . . . the surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation. ***Equivalents are presumptively not available with respect to that added limitation***.

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) (emphasis added). "Were it otherwise, the inventor might avoid the PTO's gatekeeping role and seek to recapture in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Festo I*, 535 U.S. at 734. Indeed, "[p]rosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose." *Id.*

This Court follows the Supreme Court's and Federal Circuit's guidance on prosecution history estoppel. *See, e.g.*, *Tritek Techs.*, 67 Fed. Cl. at 758–59 (2005) (finding a plaintiff "unable to overcome the presumptive surrender of all equivalents brought about by the cancellation of application claim 1" and consequently finding "no range of equivalence" available for infringement under the doctrine of equivalents); *Masco Corp. v. United States*, 56 Fed. Cl. 400, 413 (2003) (finding that a plaintiff "cannot recapture the pulling action that it surrendered during patent prosecution" and precluding reliance on the doctrine of equivalents).

There can be no question here that the amendment during prosecution narrowed the scope of claims of the '506 patent as they relate to the limitation "disposing a metal ring to surround the integrated circuit" and that Supreme Court and Federal Circuit precedent consequently bars IRIS from invoking the doctrine of equivalents concerning this limitation. The sole independent claim of the '506 patent recites, *inter alia*, "[a] method of making an identification document comprising the steps of:  forming a contactless communication insert unit by electrically connecting an

11

integrated circuit including a microprocessor, a controller, a memory unit, a radio frequency input/output device and an antenna, ***and disposing a metal ring to surround the integrated circuit***." '506 patent at 20:10–31 (emphasis added).  And the limitation "disposing a metal ring to surround the integrated circuit" was added to the independent claim during prosecution to overcome an obviousness rejection.

As originally presented, Application Claim 1 lacked the limitation "disposing a metal ring to surround the integrated circuit."  That limitation was found only in dependent Application Claim 4:  "A method of making an identification document according to claim 1, wherein the step of forming a contactless communication insert unit includes the step of disposing a metal ring to surround the integrated circuit."  Ex. C at 44–45.  During prosecution, in an Office Action dated November 24, 1998, the Examiner rejected Application Claims 1–3 and 5–8 under 35 U.S.C. § 103.  The Examiner indicated that Application Claim 4 would be allowable if rewritten in independent form:

*Allowable Subject Matter*

8.   **Claim 4** is objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

*Id.* at 84.

In response to the Examiner's Office Action, the applicant amended Application Claim 1 to include the limitations of Application Claim 4, and then canceled Application Claim 4:

Please amend claim 1 as follows:

1.   (Amended)   A method of making an identification document comprising the steps of:

forming a contactless communication insert unit by electrically connecting an integrated circuit including a microprocessor, a controller, a memory unit, a radio frequency input/output device and an antenna, <u>and disposing a metal ring to surround the integrated circuit</u>;

> disposing the contactless communication insert unit on a substrate and [laminated] _laminating it_ to form a laminated substrate;
>
> supplying a first sheet of base material;
>
> supplying a second sheet of base material;
>
> disposing the second sheet of base material on top of the first sheet of base material and inserting the laminated substrate including the contactless communication insert unit between the first and second sheets of base material; and
>
> joining a third sheet of base material to the first and second sheets of base material having the laminated substrate disposed therebetween, the third sheet of base material containing printed text data located so as to be readable by humans.
>
> Please cancel claim 4 without prejudice or disclaimer of the subject matter recited therein.

*Id.* at 90–91.

The applicant expressly emphasized the criticality of the metal ring limitation from Application Claim 4 in its request that claim 1, as amended, be allowed over the prior art:

> Applicant respectfully submits that the prior art made of record and not relied upon does not teach "A method of making an identification document comprising the steps of: forming a contactless communication insert unit by electrically connecting an integrated circuit including a microprocessor, a controller, a memory unit, a radio frequency input/output device and an antenna, _and disposing a metal ring to surround the integrated circuit;_ disposing the contactless communication insert unit on a substrate and laminating it to form a laminated substrate; supplying a first sheet of base material; supplying a second sheet of base material; disposing the second sheet of base material on top of the first sheet of base material and inserting the laminated substrate including the contactless communication insert unit between the first and second sheets of base material; and joining a third sheet of base material to the first and second sheets of base material having the laminated substrate disposed therebetween, the third sheet of base material containing printed text data located so as to be readable by humans", as is taught by the present invention.

*Id.* at 93.

The applicant further confirmed in this amendment that he was complying with the examiner's direction by amending Application Claim 1 (rather than rewriting Application Claim 4 in independent form) in order to preserve dependencies:

> Applicant thanks the Examiner for the indication that claim 4, if rewritten in independent form including all the limitations of the base claim and any intervening claims, is allowable over the prior art.   Claim 1 has been amended to include the limitation of claim 4, "disposing a metal ring to surround the integrated circuit".   ***Since this is the equivalent to rewriting claim 4 in independent form*** including all the limitations of the base claim and any intervening claims, claim 1 in now in a form to be allowed and the dependencies of claims 2, 3, 5, 6, 7, and 8 are preserved.

*Id.* at 92 (emphasis added).   Thus, by the patentee's admission, there is and can be no distinction between amending claim 1 to include the limitation of claim 4 (as the patentee did) and amending claim 4 to include all limitations of claim 1 (as the examiner requested).

The alleged point of novelty or non-obviousness, and the sole basis for allowance, of the '506 patent claims was the addition of "disposing a metal ring to surround the integrated circuit." Indeed, IRIS never contested the examiner's rejection of original claims 1–3 and 5–8 in the amendment dated February 2, 1999, no continuation or divisional applications were ever filed based on the '506 patent, and the applicant never appealed the rejections of original claims 1–3 and 5–8 pursuant to 35 U.S.C. § 134.   Thus, the applicants effectively conceded that original claims 1–3 and 5–8 were unpatentable but for the addition of the newly added "metal ring to surround the integrated circuit" in claim 1.   *Festo I*, 535 U.S. at 734 ("While the patentee has the right to appeal, his decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim."); *see also I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 443 (1926) ("If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it.").

The patentee's surrender of equivalents to "disposing a metal ring" mirrors exactly the surrender and resulting estoppel found by the Federal Circuit in *Honeywell*, in accordance with the Supreme Court's determination in *Festo I*. *Honeywell*, 370 F.3d at 1134. In *Honeywell*, the examiner rejected the independent claims as obvious in light of prior art during the prosecution of the plaintiff's patents but indicated that certain dependent claims, containing an "inlet guide vane" limitation absent from the independent claims, would be allowed if rewritten into independent form. *Id.* at 1137. The patentee, in response, canceled the rejected independent claims and amended dependent claims to include limitations from those rejected independent claims. *Id.* The Federal Circuit, sitting *en banc*, found a presumptive surrender of all equivalents to the "inlet guide vane" limitation because that limitation was effectively added to the claimed invention. *Id.* at 1144.

Other Federal Circuit authority is similarly instructive. In *Deering Precision Instruments, LLC v. Vector Distribution Systems, Inc.*, the Federal Circuit held that the patentee was presumptively barred from arguing infringement under the doctrine of equivalents due to a limitation added during prosecution in response to a rejection. 347 F.3d 1314, 1326 (Fed. Cir. 2003) ("The territory between the sliding weight limitation of original claim 1 and the Zero Position Limitation was thus surrendered by the patentees."). According to the Federal Circuit, "it is clear from the prosecution history that the allowance of claim 1, the broadest claim, depended on the amendment narrowing the Zero Position Limitation to that of a dependent claim." *Id.* Likewise, in *Felix v. American Honda Motor Co.*, the Federal Circuit found the patentee "presumptively barred from relying on the doctrine of equivalents to prove that Honda's In-Bed Trunk meets the gasket limitation—one of the two limitations added by amendment." 562 F.3d 1167, 1184 (Fed. Cir. 2009). There, the gasket limitation was not contained in original independent

15

claim 1, but was present in dependent claim 7.  *Id.* at 1182.  As the Federal Circuit held, "Felix's decision in the first amendment to cancel original claim 1 and to rewrite original claim 7 in independent form as claim 14 gave rise to a presumption of surrender.  *Id.*

The Court should find the same presumption of estoppel against IRIS.  The question of whether to apply the presumption of prosecution history estoppel, thereby placing the burden on IRIS to demonstrate that the doctrine of equivalents may be applied to satisfy the limitation "disposing a metal ring to surround the integrated circuit," is a pure question of law based on the intrinsic record of the patent.  *See Intervet Inc.*, 617 F.3d at 1291; *Tritek Techs., Inc.*, 67 Fed. Cl. at 742.  Here, that record mandates that the presumption apply.  The only difference between Application Claim 4 and rejected Application Claim 1 is the limitation "disposing a metal ring to surround the integrated circuit."  The patentee's amendment in response to the examiner's obviousness rejection—which the patentee conceded had the effect of re-writing dependent claim 4 in independent form—gives rise to the presumption of estoppel as it relates to the "disposing a metal ring" limitation.  Thus, IRIS must be presumptively barred from availing itself of the doctrine of equivalents for that limitation.

### 3.     *IRIS cannot rebut the presumption of prosecution history estoppel barring it from relying on the doctrine of equivalents.*

A patent holder may rebut the presumption of prosecution history estoppel by demonstrating that:  (1) "the alleged equivalent would have been unforeseeable at the time . . . the narrowing amendment" was made; (2) "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent" at issue; or (3) "there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (*en banc*) (*Festo II*) (quoting *Festo I*, 535 U.S. at 741).  The Supreme Court has "made

clear that the patentee bears the burden of showing that a narrowing amendment did not surrender a particular equivalent." *Festo II*, 344 F.3d at 1369. To date, IRIS has only identified the second exception in support of its claims, and in any event, cannot carry its burden of showing that ***any*** exception applies.[8]

IRIS' narrowing amendment was not tangential to the "metal ring" limitation. Whether an amendment is "tangential" focuses on the "objectively apparent reason for the narrowing amendment, which must be discernible from the prosecution history record." *Felix*, 562 F.3d at 1184 (quoting *Festo II*, 344 F.3d at 1369). The Federal Circuit has explained that "[t]he tangential relation criterion for overcoming the *Festo* presumption is ***very narrow***." *Honeywell*, 523 F.3d at 1315 (emphasis added). "When the patentee is unable to explain the reason for amendment, estoppel not only applies but also bars the application of the doctrine of equivalents as to that element." *Festo I*, 535 U.S. at 740.

Here, the '506 patent's prosecution history forecloses any argument that the amendment narrowing Application Claim 1 to include the "metal ring" limitation was "tangential." The sole limitation of Application Claim 4, beyond claiming dependency on Application Claim 1, was "disposing a metal ring to surround the integrated circuit." Ex. C at 45. And the sole limitation added to claim 1 to secure issuance was "disposing a metal ring to surround the integrated circuit." *Id.* at 90–91. The patentee in fact emphasized the direct correlation between the "metal ring" limitation and its arguments for allowance, and provided no other explanation for the amendment. *Id.* at 93.

---

[8]   IRIS has previously cited to two Federal Circuit cases apparently to contend that IRIS agrees the presumption of prosecution history estoppel applies but that the "tangentiality" exception applies. J. Prelim. Status Report (ECF 20) at 4.

Cases addressing the "tangential" exception, such as those previously identified by IRIS, confirm that the exception does not apply here.  For example, in *Regents of the University of California v. Dakocytomation California, Inc.*, the Federal Circuit considered whether a patentee's rationale underlying a narrowing amendment bore no more than a tangential relation to the element alleged to have an equivalent, and thus overcame the presumption of prosecution history estoppel. 517 F.3d 1364, 1377–78 (Fed. Cir. 2008).  Specifically, the parties contested whether the plaintiff could invoke the doctrine of equivalents in accusing synthetic nucleic acids of infringing a claim reciting the use of "blocking nucleic acids." *Id.*  ("Because the HER2 and TOP2A kits do not use human DNA, and instead use synthetic nucleic acids referred to as peptide nucleic acids ('PNA'), the court concluded that those products do not literally infringe the '841 patent.").  While the court ultimately found that the patentee rebutted the presumption of prosecution history estoppel, no analogy can be drawn to the case at bar.

In contrast to the prosecution of the '506 patent, the patentee in *Regents of the University of California* provided detailed argument during prosecution that explained the reason for the amendment and its tangential nature to the element alleged to have an equivalent. *Id.*  Specifically, the patentee argued that the claimed method was new and nonobvious because a person of ordinary skill would not have considered the use of "blocking nucleic acids" in connection with in situ hybridization for the detection of unique sequences. *Id.*  IRIS' silence during prosecution precludes it from making such a claim here.  There is no explanation that IRIS can point to, beyond the mere inclusion of the "metal ring" limitation, and therefore no "objectively apparent reason for the narrowing amendment, discernible from the prosecution history record." *Felix*, 562 F.3d at 1184.  Indeed, "[w]here no explanation is established . . . the court should presume that the patent

applicant had a substantial reason related to patentability for including the limiting element added by amendment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997).

Moreover, even if IRIS could overcome its silence—and it cannot—the rationale of *Regents of the University of California* would still preclude IRIS from relying on the doctrine of equivalents. In *Regents of the University of California*, the recitation of "nucleic acids" existed in the claim prior to amendment and argument. *Id.* ("Indeed, the 'nucleic acid' limitation was never narrowed during prosecution and was not at issue in the office action rejecting the claims, the Examiner Interview Summary Record, or the patentees' remarks accompanying the amendment."). Here, the "metal ring" limitation was wholly absent from Application Claim 1 prior to amendment and was the sole basis for allowance. Ex. C at 45, 90–93. Nothing in the prosecution history exists that would permit an argument that an equivalent to "disposing a metal ring to surround the integrated circuit" would be tangential to the narrowing amendment made for the purposes of securing patentability. *Id.*

Likewise, the Federal Circuit's holding in *Funai Electric Co. v. Daewoo Electronics Corp.*, fails to support any contention by IRIS that the addition of the "metal ring" limitation was "tangential." 616 F.3d 1357, 1368–69 (Fed. Cir. 2010). There, the Federal Circuit found that the limitation "insulating material" was tangential to the claim amendment in question because electrical insulation of the drive motor from the chassis was recited in both the original independent claim that was canceled and in the original dependent claim, which survived in independent form. *Id.* Moreover, the nature of the "insulating material" (the specific equivalents at issue) was not a factor in the allowance of the claim. *Id.*

No analogous argument can be made here with respect to the limitation "disposing a metal ring to surround the integrated circuit." As set forth above, "disposing a metal ring to surround

the integrated circuit" was not present in the original claim, it was the only limitation added to secure the allowance of issued claim 1, and the addition of the limitation was the sole reason for allowance. Ex. C at 45, 90–93. Unlike in *Funai*, the "metal ring" limitation was therefore the sole limitation at issue and directly related to the rejection of Application Claim 1 and subsequent allowance of issued claim 1. IRIS cannot recapture what it surrendered during prosecution of the '506 patent, and accordingly, IRIS is precluded as a matter of law from applying the doctrine of equivalents to the limitation "disposing a metal ring to surround the integrated circuit."

## III.    CONCLUSION

Prosecution history estoppel prevents IRIS from invoking the doctrine of equivalents with respect to the limitation "disposing a metal ring to surround the integrated circuit" required by claim 1 of the '506 patent (and all of its dependent claims). This constitutes a complete bar to IRIS' claim of infringement against the Government. As recited in the Amended Complaint, IRIS relies ***only*** on equivalency for the allegation that any of the "accused electronic passports" meet this "metal ring" limitation. IRIS has therefore failed to state a claim of infringement for any claim of the '506 patent. Accordingly, the Government respectfully requests that the Amended Complaint be dismissed with prejudice.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

s/ *Philip Charles Sternhell*

Of Counsel:                              PHILIP CHARLES STERNHELL
CONRAD J. DeWITTE, JR.      Commercial Litigation Branch
Department of Justice                Civil Division
                                               U.S. Department of Justice
                                               Washington, D.C.  20530
                                               philip.c.sternhell@usdoj.gov
                                               Telephone:     (202) 353-0522
                                               Facsimile:      (202) 307-0345

June 14, 2018                          COUNSEL FOR THE UNITED STATES